**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                       **Cr. No. 11-02416-JCH**

**MICHAEL LOVATO,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Michael Lovato's *Motion to Suppress Search Warrant and the Evidence Obtained as a Result Thereof* (Doc. 35). On February 14, 2012, the Court held an evidentiary hearing on the motion, at which Defendant was present and represented by Robert J. Gorence. Joel R. Meyers represented the United States. The hearing was continued and resumed on May 22, 2012. After considering the motion, briefs and supplemental briefs filed by both parties, and the arguments of counsel and testimony offered into evidence at the evidentiary hearing, and being otherwise fully informed, the Court concludes that Defendant's motion should be denied.

**FACTS**

The instant motion turns on the legality of an affidavit proffered by Detective Matthew Martinez of the Santa Fe Police Department in support of a search warrant, and on alleged impropriety by Martinez following the affidavit's preparation.

On August 17, 2011, Martinez prepared the affidavit, which set forth factual allegations

purporting to show probable cause justifying a search of Defendant's residence at 2371 #B Camino Capitan in Santa Fe.  Martinez reported that on July 18, 2011, a confidential informant informed him that the informant had observed within the previous 96 hours a "large quantity of cocaine . . .  inside of a large empty container of inositol powder" in Defendant's oven.  (Doc. 35 Ex. 1).  The informant further relayed the information that Defendant kept a black Glock handgun in his bedroom, typically took "up to a week to sell the quantity of cocaine that he had," and kept the money from his sales in his kitchen or bedroom.

Martinez stated that he followed up on the informant's tip by going to Defendant's residence the same day, July 18, 2011, where, after discovering that Defendant was not at home, he looked through the kitchen window and observed a large container of inositol powder sitting on the stove.  Martinez stated that he waited outside Defendant's residence for him to return for another 20 minutes, then left.

Martinez's affidavit went on to state that on August 18, 2011 – one day *after* the affidavit was signed and the warrant issued – he reached out to his informant to see if the informant had any fresh information of alleged criminal activity by Defendant.  The informant informed Martinez "that within the last 72 hours it had seen [Defendant] in possession of another large quantity of cocaine at his residence "  *Id.*  The informant stated that Defendant would cut the cocaine with inositol powder "to make more product and double or triple what he paid for it," and would leave a larger quantity of narcotics in his home while taking smaller amounts out to sell around Santa Fe.

It is undisputed that the affidavit gave an incorrect date for Martinez's second tip from the confidential informant.  The government contends that the conversation occurred on August 16, 2011 – one day *before* the warrant was issued, and that Martinez negligently entered an "8"

2

instead of a "6" in preparing his affidavit, with the result that the affidavit recites that the conversation occurred on the factually-impossible future date of August 18, 2011.  *See* Doc. 49, Tr. at 39:3-39:4 (Martinez testifying that "either I was going off of July 18th" – the date of the first tip from his informant – "and just put August 18th, or I just put the wrong date"). Defendant suggests in his brief that the entry of an incorrect date was deliberate, and that the alleged second tip could have been made on another date or may not have been made at all. However, Defendant appeared to take the position at the evidentiary hearing that Martinez did, in fact, receive a second tip from his informant on August 16, 2011, and simply made a negligent mistake in preparing his affidavit.  *See id.* at 10:5-10:8 (Defense counsel stating, " I'm not averring that we never put in our motion that this was willful, that they actually wanted to put a false date for some reason"); Doc. 56 at 37:13-37:14 (Defense counsel clarifying his position that Martinez did not "intentionally tr[y] to fool" the issuing judge at the time he prepared his affidavit).

On August 17, 2011, Martinez presented his affidavit to then-Assistant District Attorney Shelley Strong, who approved it for submission to a judge without noticing the incorrect date. The same day, Judge Michael Vigil of the New Mexico State First Judicial District Court issued a warrant on the strength of Martinez's affidavit.

The search warrant for Defendant's residence was executed on August 18, 2011.  Upon entering the residence, the executing officers observed Defendant standing in his living room with a loaded, 9 mm Smith and Wesson Model M&P9c handgun within his reach.  A further search of Defendant's residence revealed a plastic bag containing approximately two ounces of cocaine, a separate plastic bag containing approximately five ounces of cocaine base, and $3700. Officers also seized paraphernalia including a digital scale, a bottle if inositol powder, and

plastic bags of the sort that contained the cocaine and cocaine base.

Defendant was subsequently charged with one count of Possession with Intent to Distribute 28 Grams and More of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (B)(1)(B); one count of Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (B)(1)(C); and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).

Martinez testified that he realized he had entered an incorrect date on his affidavit while preparing Defendant's arrest report.  It is undisputed that Martinez never sought the Court's permission to amend the affidavit.

## DISCUSSION

Defendant argues that the search warrant issued for his residence was not supported by probable cause because it was based on "false and factually impossible information" set forth in the attached affidavit of Detective Martinez.  (Doc. 35 at 2).  As set forth above, Martinez's affidavit recites that on August 18, 2011 – one day after the affidavit was prepared and the warrant issued – he received a tip that Defendant had been in possession of a large amount of cocaine within the previous 72 hours.  Defendant contends that because it was factually impossible for this sequence of events to have occurred on the date in the affidavit, the warrant should be analyzed with the events in question omitted and found to be lacking in probable cause.  The government's response concedes that the statement that Martinez spoke with his informant on August 18, 2011 is plainly false, but contends that Defendant cannot show that the statement was made knowingly and intentionally, or with reckless disregard for the truth.  The government thus asks the Court to reject Defendant's attempt to "elevate a single typographical

4

error in an affidavit into . . . suppression of evidence in this case."  (Doc. 36 at 4).

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit."  *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001), citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).[1]  Accordingly, where a court concludes that a police officer intentionally made a false statement in an affidavit accompanying a search warrant, the court must then determine whether probable cause existed for the search "by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause."  *Id.*, citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).  Here, the Court need not undertake to consider the affidavit with the relevant information omitted, because Defendant has not shown that the incorrect date appeared on the affidavit as a result of Martinez's making a false statement knowingly and intentionally, or with reckless disregard for the truth.

I.      *The false information in the affidavit was merely a typographical error*

A mere typographical error in a warrant affidavit does not render a warrant void.  *See United States v. Gary*, 528 F.3d 324, 329 (10th Cir. 2008) (finding that "typographical mistake as to the year was inadvertent, and at best could be chalked up to negligence on the fault of the officer who prepared the affidavit"); *see also United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004) (rejecting defendant's argument that fruits of search should be suppressed because "the

_____

[1]In his brief in support of the instant motion, Defendant requested that the Court hold a *Franks* hearing to determine whether the affidavit in issue was based on false statements by Detective Martinez.  The Court's evidentiary hearing on the instant motion was not a full-blown *Franks* hearing, which must be ordered only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  *Franks*, 438 U.S. at 155-56.

incorrect date on the face of the warrant renders it invalid for lack of sufficient probable cause"). Detective Martinez testified that while the contact at issue otherwise occurred exactly as represented in his affidavit, he inadvertently entered the wrong date – August *18*, instead of August *16*, when the events in question actually occurred – in preparing the document. This mistake also went unnoticed by both the Assistant District Attorney who reviewed the affidavit and the issuing judge. See Doc. 49, Tr. at 81:7 (Strong testifying that she "believed [the discrepancy] to be a typo" that escaped her notice). (There is simply no indication that Martinez did anything more untoward than press the wrong key on a keyboard in preparing his affidavit.

Indeed, Defendant does not argue that the informant's report to Martinez did not occur as recited in the affidavit or that Martinez intentionally or recklessly misled the issuing judge at the time he went before the state court. *See* Doc. 56, Tr. at 37:13-37:14 (counsel for Defendant clarifying "I'm not saying he intentionally tried to fool Judge Vigil"). Rather, Defendant suggests that because it was "factually impossible" for the conversation at issue to have occurred on August 18, the warrant should be analyzed for validity with all reference to the informant's second tip omitted. The Court disagrees, and finds that the two cases Defendant cites in support of his argument are plainly distinguishable. In *United States v. Johns,* 851 F.2d 1131, 1133-34 (9th Cir. 1988), the Ninth Circuit held that a *Franks* hearing should have been held and a warrant analyzed with false information omitted where a law enforcement officer's attached affidavit recited that officers detected the scent of certain chemicals used in the manufacturing of methamphetamine at the defendant's property, when it was in fact scientifically impossible for the officers to have detected those odors. Similarly, in *United States v. Harris*, 464 F.3d 733, 740 (7th Cir. 2006), the Seventh Circuit held that a warrant affidavit should be considered without the factually impossible information that a reported drug dealer's brother was present at

his home at a time when the brother was incarcerated.  Here, the simple and self-evident nature

of Martinez' error belies Defendant's claim that it resembles the false information at issue in

*Johns* and *Harris*, which could not have been the result of anything other than duplicity.

Martinez's entry of an obviously incorrect date in his affidavit was not intentional.

II.      *There is no evidence that the typographical error came to light before the warrant was executed*

   At the evidentiary hearing, Defendant's counsel argued for the first time that Detective

Martinez became aware of the typographical error in his affidavit after the warrant was reviewed

and approved by the issuing judge but before it was executed, and that Martinez's failure to

make the necessary correction requires that the warrant be voided:

> But the question is, if [Martinez] . . .  had the opportunity to amend it prior to the
> execution, the question is, if you don't do that, I believe that satisfies the reckless
> standard of misleading a judge when you know it's wrong.  And that's really the
> issue.

(Doc. 56, Tr. at 31:6-31:13).  Indeed, counsel for Defendant further intimated that the warrant

should be found deficient even if the error was not caught until *after* the search, on the ground

that Martinez's failure to file an amended notice with the Court suggests that he possesses an

overall character for recklessness:

> [A] discrepancy of this nature on an affidavit is significant and would be
> significant to any diligent detective.  He's informed by the DA, because he knows
> there's a problem, which is why he goes to her and tells her.  When she tells him
> what to do to fix it and he never does it, I think that reflects [ ] not only [on] his
> credibility.
>
> . . .
>
> And even if he didn't fix – I mean before the execution, he had a duty afterwards.
> Afterwards, by not fixing it, it was reckless and should be struck.

*Id.,* Tr. at 33:20-34:25.

There is no evidence that the error in the affidavit was caught before the warrant was executed.  Martinez testified that he only realized his mistake after the search was made, while preparing Defendant's arrest report; however, he could not recall whether he alerted anyone at the District Attorney's office to his error.  (Doc. 49, Tr. at 39, 60).  Former Assistant District Attorney Strong confirmed that it was Martinez who realized that he had inadvertently recited an incorrect date as the date of his second report from the confidential informant, and that she only learned of the mistake because he contacted her to seek her advice after making the discovery.  Strong further testified that she advised Martinez to "file an amended version" of his affidavit, but admitted that she could not "remember if he spoke to me about the date after or before executing the warrant." *Id.*, Tr. at 78:4-78:5, 78:19-18:21.  Taken together, the testimony of Martinez and Strong is not inconsistent.[2]  Accordingly, the Court concludes that the typographical error was first noticed by the affiant, Detective Martinez, while preparing Defendant's arrest report; that Martinez subsequently notified ADA Strong; and that Strong advised him to file an amended notice with the Court.

While it is undisputed that Martinez failed to alert the state court to his error, it is not the present function of the Court to consider the appropriateness of a police officer's conduct after a search warrant is executed.  Rather, the Court must determine whether the officer intentionally or recklessly made a false statement in *seeking* the warrant.  *See Basham*, 268 F.3d at 1204. Indeed, Defendant does not cite any case law in support of his alternative argument that a

---

[2]Defendant proffers a supplemental brief on the instant motion, arguing that a 2007 polygraph examination administered to Detective Martinez in relation to another matter should be considered by the Court when evaluating his credibility as a witness.  Because the Court finds that there are no inconsistencies between the testimony of Martinez and Strong, and no other credibility issues involving Martinez's testimony, it need not reach the issue of whether to consider the polygraph results.

typographical error in a warrant affidavit that the affiant discovers and allows to stand after the warrant is executed is retroactively transformed into an intentional false statement to the issuing judge.  Therefore, in the absence of any known authority supporting his position, the Court finds that Defendant's motion should be denied.

## **CONCLUSION**

For the foregoing reasons, it is therefore ordered that Defendant's *Motion to Suppress Search Warrant and the Evidence Obtained as a Result Thereof*  (Doc. 35) is DENIED.

_____
UNITED STATES DISTRICT JUDGE

9